DUNKLE, APPELLANT, *v.* STANDARD LIFE & ACCIDENT INS. CO., APPELLEE.

(No. 239—Decided June 28, 1961.)

*Mr. Forrest P. Moore,* for appellant.
*Messrs. Silbaugh & Reed,* for appellee.

COLLIER, J.  This action was instituted in the Common Pleas Court of Hocking County, Ohio, by Mona Geneva Dunkle, herein referred to as the plaintiff, upon an accident insurance policy in which she is named as beneficiary to recover the death benefits provided for in the accidental death indemnity provisions of the policy.  The policy was issued to James Richard by the Standard Life & Accident Insurance Company, herein designated as the defendant, on February 5, 1956, and remained in force until his death on July 10, 1959.

At the conclusion of plaintiff's evidence, defendant moved for a directed verdict, which motion was sustained and from which judgment the plaintiff has perfected her appeal on questions of law to this court.  The assignments of error are:

"1. The court erred in failing to call the names of the jurors before receiving the verdict.

"2. The court erred in granting defendant's motion for a directed verdict in that the jury viewed the scene of the accident while the court did not, and, thus, the court did not have the means of understanding the evidence that the jury had.

"3. The court erred in granting defendant's motion for a directed verdict at the close of plaintiff's evidence.

"4. The verdict and judgment is contrary to law and is manifestly against the weight of the evidence."

Under the first assignment of error, the plaintiff claims that the trial court erred in receiving the verdict in that, when the jury returned the verdict, the names of the jurors were not called by the clerk as required by Section 2315.09, Revised Code.  This statute, so far as pertinent, reads:

"The verdict shall be in writing and signed by each of such jurors concurring therein, and they must then be conducted into court, where their names shall be called by the clerk, and the verdict handed to the clerk by the foreman."

The record is silent as to what occurred in the courtroom when the verdict was read.  The record reads, "Thereupon the jury, having retired, returned a verdict in favor of the defendant as appears of record."  If the clerk failed to follow the statutory procedure in receiving the verdict, such failure was not called to the attention of the trial court and such omission does not appear in the record.  In this situation, the presumption of regularity prevails, and the reviewing court

may not assume an error which is not shown by the record. Furthermore, if such alleged error was shown by the record, in our opinion, Section 2315.09, Revised Code, would have no application where the court peremptorily directed the jury to return a certain verdict. This assignment is overruled.

Under the second assignment of error, plaintiff claims that the court erred in the trial of the case for the reason that the court did not view the scene of the accident and sustained defendant's motion for a directed verdict on the insufficiency of the evidence.

Section 2315.02, Revised Code, authorizes the trial court in a proper case to order a view of a place where a material fact has occurred, but it is entirely within the discretion of the judge whether a view by the jury shall be allowed. *Maggart* v. *Deaton*, 84 Ohio App., 327, 87 N. E. (2d), 352. There is no statutory requirement that the court shall accompany the jury on a view, and, in the instant case, no such request was made by either party. Had such request been made, the court would have been justified in refusing such request.

The third and fourth assignments of error involve the weight and sufficiency of the evidence. Did the trial court err in sustaining defendant's motion for a directed verdict at the close of plaintiff's evidence? Plaintiff, in her amended petition, alleges that the insured died, directly and independently of all other causes, from injuries caused solely by reason of a collision of his automobile with a protruding gas pipe. Defendant, in its answer, denies this allegation and avers that the insured's death was due to bodily infirmities, pre-existing diseases and natural causes.

The provisions of the policy, so far as pertinent, are:

"The Insuring Clause"

"Automobile Owners Safety Insurance Company does insure James Richard—against loss from accidental bodily injury sustained while driving or riding within any automobile, truck or bus for business or pleasure during the term of this policy, provided such bodily injuries are caused solely by reason of an automobile, truck or bus accident."

"Payment for Loss of Life"

"If the insured shall sustain 'such injury' as described in the insuring clause and not hereinafter excepted, which shall

directly and independently of all other causes result in death within sixty (60) days from the date of accident, the company will pay the sum of two thousand dollars ($2,000)."

The evidence adduced by the plaintiff may be summarized as follows:

The insured was a man 74 years of age at the time of his death and had received medication for a weakened heart for several years prior thereto. There is no dispute that the policy was in effect on the date of his death, and that the defendant was duly notified of decedent's death in accordance with the terms of the policy. On July 10, 1959, the insured was last seen driving his automobile alone toward the Harold Kost property, and he was next seen lying face down on the ground beside his automobile, which had come to rest against a gas valve a few feet off the driveway on the Kost property at the foot of a steep incline. There were no marks or signs of injury on the body. Tire marks in the gravel indicated that the insured's automobile had stalled while ascending the incline, and it had backed down the hill under some control and had stopped against a gas valve without damage to the automobile.

There were no witnesses to what occurred to the insured immediately before his death. Dr. Yaw, the coroner who examined the body at the scene, recited the cause of death on the death certificate as, "heart failure due to coronary occlusion." When asked as to the probability of the coronary occlusion being caused by the impact of decedent's body striking the ground, Dr. Yaw answered, "I don't think that it is more probable than the possibility that he had his attack before he struck the pipe." Dr. Yaw testified further that it was impossible to determine when the heart attack occurred, and that it could have occurred at the top of the incline or after the insured had gotten out of the automobile.

Plaintiff bases her right of action on the policy issued to the insured, the insuring clause of which provides:

"Against loss from accidental bodily injury sustained by driving * * * any automobile * * *, provided such bodily injuries are caused solely by reason of an automobile * * * accident."

The burden of proof was upon the plaintiff to make a prima facie case that the insured sustained the fatal injuries while

driving his automobile at the time and place alleged, and that such injuries were caused solely by reason of an automobile accident. A motion for a directed verdict involves an admission of all the facts which the evidence tends to prove. Also in considering such motion the court was required to construe the evidence most strongly in favor of the plaintiff. The only evidence bearing directly upon the cause of the death of the insured is the testimony of Dr. Yaw, who said that the death was caused by heart failure due to coronary occlusion, and that the exact time of the coronary occlusion cannot be determined. The evidence shows that the impact of the automobile with the gas pipe was very slight, and there is no indication of any physical injury to the body of the insured.

In our opinion, the plaintiff adduced no substantial evidence to establish that the insured's death was caused solely by reason of an automobile accident. So far as the evidence shows, the direct and proximate cause of the death of the insured remains a matter of conjecture and speculation. If the coronary occlusion was brought on by exhaustion of a weak heart while the insured was driving up the incline or while he was backing down the incline or after he had stopped the automobile, there certainly would be no liability under the policy. Where, in the trial of a law suit, different inferences are equally deducible from proved facts, one of which establishes liability and the others do not, a jury should not be allowed to speculate or guess as to the true factual situation. *Zeigler Milling Co.* v. *Denman*, 79 Ohio App., 250, 72 N. E. (2d), 686. Under the rule pronounced in *Hamden Lodge* v. *Ohio Fuel Gas Co.*, 127 Ohio St., 469, 189 N. E., 246, the trial court correctly sustained defendant's motion for a directed verdict.

As we find no error in the record prejudicial to the rights of the plaintiff, the judgment must be, and hereby is, affirmed.

*Judgment affirmed.*

Brown, J., concurs.
Radcliff, P. J., not participating.